1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CIRON B. SPRINGFIELD,                         No.  2:12-cv-2552 KJM AC P

12                    Plaintiff,

13          v.                                       ORDER and

14    VISMAL J. SINGH, et al.,                       FINDINGS AND RECOMMENDATIONS

15                    Defendants.

16

17    I.  INTRODUCTION

18          A.  Overview

19          Plaintiff is a state prisoner, currently incarcerated at California State Prison, Los Angeles

20    County (CSP-LAC), who proceeds pro se and in forma pauperis in this civil rights action filed

21    pursuant to 42 U.S.C. § 1983.  This action proceeds on plaintiff's First Amended Complaint

22    (FAC) filed March 18, 2013.  ECF No. 21.  Upon screening the FAC pursuant to 28 U.S.C.

23    §1915A(a), this court found that it appeared to state the following claims against the following

24    sixteen defendants at three separate prisons, CSP-LAC, California State Prison Sacramento (CSP-

25    SAC), and the California Medical Facility (CMF):

26                    Plaintiff makes colorable claims of due process violations in the
                      gang validation investigative process at the facilities and/or by his
27                    continued/extended placement in administrative segregation,
                      pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b), against
28                    CSP-LAC defendants:  Investigative  Services  Unit  (ISU)

1
2
3
4
5
6

> Correctional Officer (CO) D. Mebane; Assistant Institutional Gang Investigator (AIGI) R. Clemons; Chief Deputy Warden (CDW) C. Wofford; Correctional (Corr.) Capt. T.L. Cromwell; IGI Capt. D.J. Williams; and IGI D. Romero; against CMF defendants Warden V. Singh; CDW Brian Duffy; CDW E. Arnold; ISU Lt. T. Lee; Correctional Counselor (CC) II K. Allen; and ISU CO Hernandez; and against CSP-SAC defendants: CDW R. Meier; Corr. Capt. R. O'Brian; Corr. Lt. A. Konrad; and Asst. IGI C. Villasenor.  Plaintiff also makes cognizable claims of deliberate indifference to his serious mental health condition against defendants Wofford; Clemons; Allen; Singh; Arnold; Meier.

7

ECF No. 24 at 2.[1]

8
9
10
11
12

Currently pending are two motions filed by the defendants:  (1) a motion for summary judgment premised on plaintiff's alleged failure to exhaust his administrative remedies before commencing this action, pursuant to Rule 56, Federal Rules of Civil Procedure; and (2) a motion to dismiss premised on plaintiff's alleged failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

13
14
15

This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c), and Local General Order No. 262.  For the reasons that follow, this court recommends that defendants' motions be granted in part and denied in part.

16

B.  Related Case

17
18
19
20
21
22
23
24

On January 28, 2014, the district judge issued a Related Case Order that related this case to plaintiff's subsequently-filed case, Springfield v. Allen, Case No. 2:13-cv-00809 KJM AC P. See ECF No. 47.  By separate findings and recommendations, the undersigned has recommended that Springfield v. Allen, Case No. 2:13-cv-00809 KJM AC P, be dismissed without prejudice to plaintiff pursuing his duplicative claims against defendants Allen, Singh and Arnold in the instant action.  In addition, it is recommended herein that plaintiff be granted leave to file a Second Amended Complaint, to ensure inclusion of all plaintiff's relevant allegations and claims against these three defendants as well as the other defendants retained in this action.

25

////

26
27
28

---

[1]  This portion of the court's prior order is quoted with minor edits to maintain consistency with references in the instant findings and recommendations.  These edits include the correct spelling of defendant O'Brian's name.

II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT (FAC)

Due to the length and detail of the verified FAC, as well as its omission of pertinent facts that are otherwise apparent in plaintiff's numerous exhibits, this summary of plaintiff's allegations includes references to his exhibits and the information contained therein. See n. 6, infra.

The FAC alleges that on March 21, 2011, defendant CSP-LAC ISU CO Mebane initiated an investigation into plaintiff's interactions with another CO concerning possible criminal activity. In an effort to obtain plaintiff's cooperation, defendant Mebane placed plaintiff in the Administrative Segregation Unit (ASU). On the morning of March 30, 2011, plaintiff was released back to the general population. The supporting Classification Chrono CDC 128-G, dated March 30, 2011, was signed by defendant CSP-LAC CDW Wofford, and notes that plaintiff was released back to the general population based on the termination of the criminal investigation against him. ECF No. 21 at 28.

However, on the afternoon of March 30, 2011, defendant CSP-LAC IGI Romero, defendant CSP-LAC AIGI Clemons and another CO entered plaintiff's cell, took photographs of plaintiff's body, and informed plaintiff that if he didn't cooperate in the investigation, he would "do life in the SHU" (Segregated Housing Unit). On the same day, defendants initiated a gang validation investigation against plaintiff, and issued a CDC 114-D (ASU Placement Notice) authorizing plaintiff's placement in the ASU. The CDC 114-D was prepared by Lt. Porter on behalf of Lt. Thomas; defendant Romero signed the form with a notation that he served a copy on plaintiff March 30, 2011 at 2:32 p.m. Id. at 48. The March 30, 2011 CDC 114-D was approved, signed and dated by defendant CSP-LAC Corr. Capt. Cromwell on April 11, 2011.

Plaintiff alleges that he was not informed of the CDC 114-D until April 3, 2011, by Corr. Sgt. Diaz, and was not served with it until April 13, 2011, upon plaintiff's request. Plaintiff also asserts that his ICC hearing on the March 30, 2011 CDC 114-D was not held until May 5, 2011. Id. at 9-10.

On May 23, 2011, a classification staff representative recommended a 30-day extension of plaintiff's ASU placement. ECF No. 21 at 10, 70. However, on June 13, 2011, defendant AIGI

Clemons recommended a 90-day extension due to the ongoing investigation of plaintiff's alleged gang activity. Id. at 10, 71. On June 16, 2011, pursuant to an ICC meeting that included plaintiff and a Staff Assistant, CDW Wofford approved a 90-day extension of plaintiff's ASU placement pending completion of plaintiff's gang validation package by defendant AIGI Clemons. Id. at 10, 72.

Plaintiff relies on these events to allege that defendants Mebane, Romero, Clemons, Cromwell, and Wofford denied plaintiff due process and were deliberately indifferent to plaintiff's mental health needs by obtaining and extending plaintiff's initial ASU confinement. Id. at 9-10, 16-7.

On July 22, 2011, defendant AIGI Clemons authored a General Chrono concerning the status of the investigation into plaintiff's gang activity and plaintiff's mental health treatment. Id. at 79. The Chrono provided in pertinent part (id.):

> On March 30, 2011, [plaintiff] . . . was retained in [the ASU] at [CSP-LAC] due to an ongoing investigation by the CSP-LAC [IGI]. . . . [¶] On April 5, 2011, Springfield was placed on suicide watch and re-housed in the Correctional Treatment Center (CTC) Infirmary. On April 14, 2011, Springfield was transferred to the California Medical Facility (CMF) on Mental Health Crisis bed status. On April 22, 2011, Springfield was transferred back to LAC and re-housed in Ad-Seg. On June 16, 2011, Springfield was again placed back on suicide watch and again re-housed back in the CTC.
>
> On June 21, 2011, the investigation was completed by this investigator relevant to Springfield's association with the Black Guerilla Family [BGF]. There is sufficient evidence to submit a validation package to the Office of Correctional Safety (OCS). Part of the validation investigation requires that Springfield review the investigation documents for 24 hours and submit a written rebuttal to the evidence which he disagrees with. Per Departmental policy, while housed in the infirmary on Suicide Watch, Inmate Springfield could not possess a pen or pencil for his personal safety. On June 24, 2011, Springfield was removed from Suicide Watch status pending transfer to the Department of Mental Health (DMH). It is my opinion at this time that Inmate Springfield is utilizing the [DMH] as a means to avoid the validation process. Springfield will be served the validation evidence prior to transfer to DMH. Because Springfield was removed from Suicide Watch on 6-24-11, he can now possess a pen or pencil allowing him to submit a rebuttal to the validation evidence. The activities and associations of Inmate Springfield will continue to be monitored and documented wherever gang activity is suspected.

4

Plaintiff contends that defendant Clemons violated his due process rights and was deliberately indifferent to plaintiff's mental health needs by maliciously and vindictively continuing plaintiff's illegal confinement and denying plaintiff mental health treatment. Id. at 17; see also id. at 20-1.

On August 3, 2011, the CMF Psychiatric Clinical Assessment Team (CAT) informed CSP-LAC (specifically, Dr. Musina, who had referred plaintiff) that plaintiff "met the criteria for admission" into CMF's DMH Acute Care Program and was "approved for transfer." Id. at 78. Plaintiff was transferred to CMF/DMH on August 5, 2011.

On August 25, 2011, plaintiff's case factors were considered by a CMF Unit Classification Committee (UCC) chaired by defendant CMF CC II Allen. Plaintiff contends that defendant Allen, "in transaction with" defendants Mebane, Wofford and Clemons, violated his due process rights and was deliberately indifferent to plaintiff's mental health treatment needs by maliciously and vindictively continuing plaintiff's illegal confinement, and by depriving plaintiff of access to mental health treatment by retaining his maximum custody status. Id. at 10-1, 17-8. Specifically, plaintiff alleges that defendant Allen violated his due process when she:

> (1) Deprived the plaintiff of the opportunity to present documentary evidence, request witnesses, receive a staff assistant, (2) Failed to release the plaintiff from Ad-Seg after reviewing his case factors, and (3) unlawfully confined the plaintiff['s] atypical confinement without "some evidence" with "some indicia of reliability;" or sufficient evidence and reliance information to support her decision.

Id. at 10-1. In addition, plaintiff alleges that defendant Allen was deliberately indifferent to plaintiff's serious mental health needs when she:

> (1) Deprived the plaintiff of access to mental health treatment by failing to temporarily reduce his custody in accordance with his PSY/U[A] designation, [and] (2) unlawfully continued the plaintiff['s] atypical confinement on cuff status in P-2 Acute Psychiatric Program (APP) where he suffered injury Exhibit R.

Id. at 18.

////

////

////

5

Review of the underlying CDC 128-G Chrono indicates that plaintiff was "in absentia per C.C.R. § 3375(3)(B)[2] for a DMH review on this date . . . based on committee considering all clinical assessments and input related to Subject's current required Acute care.  A pre-committee conference was conducted with Subject in order to explain the UCC process . . . ."  Id. at 73.  It was noted that plaintiff "arrived at CMF/DMH on 8/5/2011 from SVSP-IV via LAC-ASU as a PSY/RTN."  Id.  The UCC, per defendant Allen, decided in pertinent part to "[a]ccept [plaintiff for] CMF/DMH acute care program for psychiatric treatment and return from SVSP-IV via LAC-ASU.  Maintain Max Custody. . . ."  Id.

The exhibits to the FAC also include a September 28, 2011 "Petition for Judicial Determination Re: Involuntary Medication," submitted by CMF psychiatrist Dr. Shirzai, for an interim order authorizing the administration of involuntary psychotropic medication to plaintiff until the matter was decided on the merits.  It was noted that plaintiff had a "recent history of suicide attempts, including cutting his wrists, swallowing sharp metallic objects, and hanging attempts," id. at 88, and that involuntary medication had been initiated on September 12, 2011, and authorized for an additional 21 days.  A hearing was scheduled for October 6, 2011.[3]  Id. at 80-90.

Plaintiff next contends that on December 30, 2011, defendant CSP-LAC IGI Corr. Capt. Williams denied plaintiff due process and was deliberately indifferent to plaintiff's mental health needs by failing to provide plaintiff with a written record of his validation package 14 days before it was submitted to the OCS.  Id. at 11.

Plaintiff also contends, without a date of occurrence, that defendant CMF-ISU Lt. Lee violated plaintiff's due process rights when he:

---

[2]  Cal. Code Regs., tit. 15, § 3375(3)(B) provides:  "The inmate is physically incapable of appearing before the committee, or is determined by a psychiatrist to be mentally incompetent and cannot understand the purpose of the hearing."

[3]  The exhibits to the FAC also include a March 6, 2012 CDCR 7368 re. "Notice of Intent to Renew Court-Ordered Medication," which states that the "current court order for involuntary psychiatric medication expires on 05.15.12," and identifies a hearing date of May 3, 2012.  See ECF No. 21 at 91-103.  The current record does not reveal the outcomes of these petitions.

> (1) Presented an insufficient and unreliable validation package to CMF Warden V. Singh empty of "some evidence" with "some indicia of reliability," (2) Recommended Warden V. Singh to continue the plaintiff['s] atypical confinement, (3) Failed to investigate documentary evidence and interrogate witnesses, (4) Failed to respond to the plaintiff's Form 22 (Inmate Request) Exhibit D, and (5) Failed to issue the plaintiff a written record.

Id. at 12.

Plaintiff next alleges that on January 11, 2012, at a CMF ICC hearing, defendant CMF Warden Singh, "in transaction with" defendants Allen, Wofford, Clemons, Lee, and CMF-ISU CO Hernandez, maliciously and vindictively continued plaintiff's illegal confinement. Id. at 11-2, 18-9, 67. Specifically, plaintiff alleges that defendant Singh denied him due process when he:

> (1) Prohibited the plaintiff from participating in the discussion of the ICC hearing, (2) Deprived the plaintiff of the opportunity to present documentary evidence, request witnesses, receive a staff assistant, (3) Accepted ISU Correctional Lt. T. Lee['s] recommendation as fact without investigating other evidence, and (4) Unlawfully continued the plaintiff['s] atypical confinement on Discretionary Program Status (DPS) without . . . sufficient evidence and reliable information to support his decision.

Id. at 11-2. Plaintiff also alleges that defendant Singh was deliberately indifferent to plaintiff's serious mental health needs when he:

> (1) Deprived the plaintiff of access to mental health treatment by failing to temporarily reduce the plaintiff['s] custody, (2) Knowingly allowed the plaintiff to actively decompensate, (3) Unlawfully denied CMF-CAT [] psychiatric referral, (4) Illegally continued the plaintiff['s] atypical confinement on DPS, despite the plaintiff['s] treating clinician input.

Id. at 19.

Plaintiff alleges that on January 18, 2012, defendant Singh again violated plaintiff's rights, in part by adhering to the recommendation of defendant Lee that plaintiff be interviewed by the Office of Internal Affairs (OIA). Plaintiff states that he was interviewed by an unidentified OIA agent on January 19, 2012 and again threatened with life in the SHU. Id. at 13, 19.

Plaintiff also alleges that defendant Singh denied him due process when he "didn't allow the plaintiff to participate" at the January 18, 2012 CMF-ICC hearing, and that Singh continued to be deliberately indifferent to plaintiff's serious mental health needs when, "on January 18, 2012

7

1  during a CMF-ICC/IDTT hearing Exhibit F, p.2, Warden V. Singh denied CMF/CAT psychiatric

2  referral by unlawfully affirming his January 11, 2012 committee decision," id. at 12, 19.

3        On January 25, 2012,[4] the CMF ICC denied plaintiff's request to participate in DMH's

4  Unit P-3/ICF program without physical restraints.  Id. at 64.  Plaintiff was in attendance, as were

5  defendants CC Allen and CMF CDW Arnold.  The meeting, chaired by defendant Arnold, was

6  convened for the purpose of considering plaintiff's "participation at CMF in the DMG P-3/ICF

7  Program without (w/o) the use of physical or mechanical restraints."  Id.  The ICC declined to

8  authorize removal of plaintiff's restraints for the following reasons:

9
10
11
12
13
> [I]t is ICC's opinion that due to the inmate's current validation
> processing, coupled with concerns of a high placement score of 205
> points (having been charged and found guilty of Serious RVR
> charges in the past, which has kept him at a Level-IV overall
> scores), committee believes he cannot safely participate, within this
> particular program at this time.  Due to the current validation
> process, it is in the interest of safety and security that this inmate be
> retained on ASU status, while housed at DMH.

14  Id.  The ICC noted plaintiff's concerns that his ASU status rendered him "unable to participate

15  [in] the 'full potential' of the program," but opined "that the use of restraints and limited

16  movement within the DMH program will not take away from the treatment that DMH provides to

17  inmate patients."  Id.  Plaintiff alleges that, pursuant to this decision, defendant Arnold, "in

18  transaction with" defendants Singh, Allen, Lee, Mebane, Clemons and Hernandez, deprived

19  plaintiff of his due process rights and was deliberately indifferent to plaintiff's mental health

20  needs, by continuing plaintiff's unlawful confinement, and unlawfully modifying plaintiff's

21  classification status.  Id. at 13, 19-20.  Specifically, plaintiff alleges that defendant Arnold denied

22  him due process when he:

23
24
25
26
> (1) Deprived the plaintiff of the opportunity to present documentary
> evidence, request witnesses, receive a Staff Assistant and have
> his declaration recorded, (2) Failed to investigate the due
> process violation regarding the written record, (3) Unlawfully
> continued the plaintiff['s] atypical confinement on DPS without
> "some evidence with "some reliable indicia of reliability;" or

27  [4]  As indicated on several other copies of this chrono in the record, the date was mistakenly noted
    as 1/25/11 rather than 1/25/12.

28

8

sufficient evidence and reliable information to support his decision, (4) unlawfully changed the plaintiff['s] classification status from PSY/DMH to ASU/DMH, and (5) Failed to discontinue the plaintiff "RE" (Racially Eligible) designation.

Id. at 13.  In addition, plaintiff alleges that defendant Arnold was deliberately indifferent to plaintiff's mental health needs when he:

(1) Deprived the plaintiff of access to mental health treatment by failing to temporarily reduce the plaintiff['s] custody in accordance with his PSY/UA designation, (2) Knowingly allowed the plaintiff to actively decompensate, (3) Unlawfully denied CMF-CAT psychiatric referral, (4) Illegally continued the plaintiff['s] atypical confinement on DPS, and (5) Illegally changed the plaintiff['s] classification from PSY/DMH to ASU/DMH.

Id. at 20.

On February 9, 2012, plaintiff was formally validated as a member of the BGF prison gang.  Id. at 75 (noting that the validation was based on a package submitted December 30, 2011 by defendant CSP-LAC IGI Williams).  See also id. at 77; but see ECF No. 35-8 at 49 (validation formalized March 19, 2012; plaintiff informed on April 9, 2012).

Significantly, however, a decision in one of plaintiff's administrative appeals on May 14, 2102 noted that OSU had rescinded plaintiff's validation package in recognition that plaintiff had been denied due process.  See ECF No. 35-8 at 49-50.  The rescission was without prejudice to a renewed validation package complying with due process standards; however, the record contains no allegations or evidence that a new validation process was initiated.

Thereafter, on June 6, 2012, the CMF ICC approved plaintiff's participation in CMF's "DMH/ICF-VPP Program" "without restraints."  Id. at 74.  Plaintiff's custody status was temporarily reduced to "CLOSE A" for "DMH/ICF cell programming purposes only."  Id.  The decision noted that "[u]pon DMH/ICF discharge [plaintiff's] custody will revert back to MAX based on said pending gang validation."  Id.  The subject CDC 128-G Chrono was signed by defendant CMF CDW Duffy, and others.  Plaintiff contends that Duffy acted maliciously and vindictively, without due process and with deliberate indifference to plaintiff's mental health needs in continuing plaintiff's illegal confinement upon his anticipated transfer from CMF. Plaintiff also contends that his comments at the June 6, 2012 hearing, and his declaration, were

9

1   not recorded on the subject CDC 128-G Chrono.  Id. at 13-4.

2          Plaintiff was transferred from CSP-LAC to CSP-SAC on July 28, 2012, and admitted into

3   a Mental Health Crisis Bed Unit.  Id. at 77.  Plaintiff alleges that, on August 31, 2012, defendant

4   CSP-SAC AIGI Villasenor unlawfully reissued a CDC 128-B-2 Chrono on plaintiff.  Id. at 14

5   (citing id. at 75).  A CDC 128-G Classification Chrono dated September 4, 2012, documents

6   plaintiff's alleged refusal to appear before the CSP-SAC ICC/IDTT [Interdisciplinary Treatment

7   Team] for a "Vitek hearing" [5] on August 31, 2012.  Id. at 76.  The subject Chrono, signed by

8   defendants CSP-SAC CDW Meier, CSP-SAC Corr. Capt. O'Brian and others, noted

9   approval of plaintiff's prospective transfer back to DMH.  Id.  Plaintiff alleges that this chrono

10  demonstrates that Meier denied plaintiff due process and was deliberately indifferent to plaintiff's

11  mental health needs.  Id. at 15, 20.

12         Plaintiff alleges that on September 10, 2012, defendant CSP-SAC Corr. Lt. Konrad denied

13  plaintiff due process and was deliberately indifferent to plaintiff's mental health needs when he

14  authored a CDC 114-D (ASU Placement Notice) directing that plaintiff be housed in the ASU

15  based on plaintiff's (apparently rescinded) gang validation dated February 9, 2012.  Id. at 15-6.

16  The chrono noted that plaintiff would be seen by the ICC within 10 days.  Id. at 77.  CSP-SAC

17  Corr. Capt. O'Brian approved the chrono on September 11, 2012.  Id.

18         Based on these factual allegations, plaintiff contends that his ongoing restricted

19  confinement at each prison, pursuant to the numerous challenged official meetings and decisions,

20  and the process of his gang validation, violated plaintiff's Fourteenth Amendment rights to due

21  process.  Plaintiff also contends that his maximum custody status at each prison, particularly

22  while receiving mental health treatment at CMF, constituted cruel and unusual punishment in

23  violation of the Eighth Amendment.  By this action, plaintiff seeks punitive damages and the

24  following injunctive relief:  the court's in camera review of the confidential source items

25  _____

26  [5]  In Vitek v. Jones, 445 U.S. 480, 493-96 (1980), the Supreme Court held that the involuntary
    transfer of a state prisoner to a state mental hospital implicates liberty interests under the Due

27  Process Clause of the Fourteenth Amendment sufficient to require certain procedural safeguards
    prior to the transfer.

28

1    underlying each Form CDC 1030 submitted in support of plaintiff's initially-proposed gang

2    validation; an order requiring defendants to disclose all information underlying any new gang

3    validation notice; an order excusing plaintiff from any requirement to provide a written rebuttal in

4    response to any new evidence allegedly in support of his gang validation, thus according plaintiff

5    the right to be free of self-incrimination; an order expunging from plaintiff's Central File any data

6    that identifies plaintiff as a gang associate; an order requiring plaintiff's immediate release from

7    Administrative Segregation and a reduction in his classification to "Close B;" and an order

8    directing that plaintiff have immediate access to mental health treatment.  ECF No. 21 at 5, 23.

9    III.  MOTION FOR SUMMARY JUDGMENT

10        Defendants move for summary judgment on the ground that plaintiff failed to exhaust his

11   administrative remedies as to all claims and defendants with the exception of his due process

12   claim against defendant Lee.  See ECF No. 51-2 at 7-8; ECF No. 67 at 3.  Plaintiff filed an

13   opposition, ECF No. 63; defendants filed a reply, ECF No. 67.  Plaintiff thereafter filed a

14   surreply, ECF No. 74, which defendants move to strike, ECF No. 75.

15        A.  Surreply

16        The Local Rules do not authorize the routine filing of a surreply.  Nevertheless, a district

17   court may allow a surreply "where a valid reason for such additional briefing exists, such as

18   where the movant raises new arguments in its reply brief."  Hill v. England, 2005 WL 3031136, at

19   *1 (E.D. Cal. 2005); accord Norwood v. Byers, 2013 WL 3330643, at *3 (E.D. Cal. 2013)

20   (granting the motion to strike the surreply because "defendants did not raise new arguments in

21   their reply that necessitated additional argument from plaintiff, plaintiff did not seek leave to file

22   a surreply before actually filing it, and the arguments in the surreply do not alter the analysis

23   below"), adopted, 2013 WL 5156572 (E.D. Cal. 2013).  In the present case, defendants did not

24   raise new arguments in their reply brief, plaintiff did not seek leave to file a surreply, and his

25   arguments therein do not impact the court's analysis.  For these reasons, defendants' motion to

26   strike plaintiff's surreply, ECF No. 75, is granted.

27   ////

28   ////

11

1    B. Legal Standards

2        1. Legal Standards for Summary Judgment Motions Under Fed. R. Civ. P. 56

3    Summary judgment is appropriate when the moving party "shows that there is no genuine

4    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

5    Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

6    proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

7    v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

8    (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

9    this by "citing to particular parts of materials in the record, including depositions, documents,

10   electronically stored information, affidavits or declarations, stipulations (including those made for

11   purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

12   that such materials "do not establish the absence or presence of a genuine dispute, or that the

13   adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ.

14   P. 56(c)(1)(A), (B).

15   When the non-moving party bears the burden of proof at trial, "the moving party need

16   only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

17   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

18   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

19   against a party who fails to make a showing sufficient to establish the existence of an element

20   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

21   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

22   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

23   circumstance, summary judgment should be granted, "so long as whatever is before the district

24   court demonstrates that the standard for entry of summary judgment ... is satisfied."  Id. at 323.

25   If the moving party meets its initial responsibility, the burden then shifts to the opposing

26   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

27   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

28   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

1   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

2   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

3   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] Plaintiff's verified complaint

4   may be considered as an affidavit in opposition to summary judgment if it is based on personal

5   knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122,

6   1132 n.14 (9th Cir. 2000) (en banc).[6]

7       The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

8   might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

9   Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809

10  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

11  reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,

12  Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

13      In the endeavor to establish the existence of a factual dispute, the opposing party need not

14  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

15  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

17  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

18  Matsushita, 475 U .S. at 587 (citations omitted).

19      In evaluating the evidence to determine whether there is a genuine issue of fact," the court

20  draws "all reasonable inferences supported by the evidence in favor of the non-moving party."

21

22  [6]  In addition, in considering a dispositive motion or opposition thereto in the case of a pro se
    plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's
23  verified complaint or opposition.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)
    (evidence which could be made admissible at trial may be considered on summary judgment); see
24  also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district
    court abused its discretion in not considering plaintiff's evidence at summary judgment, "which
25  consisted primarily of litigation and administrative documents involving another prison and
    letters from other prisoners" which evidence could be made admissible at trial through the other
26  inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions
    may be cited not for precedent but to indicate how the Court of Appeals may apply existing
27  precedent).

28

1    Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).

2    It is the opposing party's obligation to produce a factual predicate from which the inference may

3    be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

4    aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

5    party "must do more than simply show that there is some metaphysical doubt as to the material

6    facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the

7    nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

8    omitted).

9           In applying these rules, district courts must "construe liberally motion papers and

10   pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

11   Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

12   support an assertion of fact or fails to properly address another party's assertion of fact, as

13   required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion

14   …."  Fed. R. Civ. P. 56(e)(2).

15                         2.  Legal Standards for Exhaustion

16                             a.  Prison Litigation Reform Act

17          Because plaintiff is a prisoner challenging the conditions of his confinement, his claims

18   are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Under the

19   PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this

20   title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

21   facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a);

22   Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all

23   prisoners seeking redress for prison circumstances or occurrences").  "The PLRA mandates that

24   inmates exhaust all available administrative remedies before filing 'any suit challenging prison

25   conditions,' including, but not limited to, suits under § 1983."  Albino, 747 F.3d at 1171 (quoting

26   Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

27          Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones

28   v. Bock, 549 U.S. 199, 204 (2007).  "[T]he defendant's burden is to prove that there was an

                                                    14

1  available administrative remedy, and that the prisoner did not exhaust that available remedy."

2  Albino, 747 F.3d at 1172.  "[T]here can be no 'absence of exhaustion' unless some relief remains

3  available."  Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005).  Therefore, the defendant must

4  produce evidence showing that a remedy is available "as a practical matter," that is, it must be

5  "capable of use; at hand."  Albino, 747 F.3d at 1171.

6      In reviewing the evidence, the court will consider, among other things, "information

7  provided to the prisoner concerning the operation of the grievance procedure."  Brown, 422 F.3d

8  at 937.  Such evidence "informs our determination of whether relief was, as a practical matter,

9  'available.'"  Id.  Thus, misleading – or blatantly incorrect – instructions from prison officials on

10  how to exhaust the appeal, especially when the instructions prevent exhaustion, can also excuse

11  the prisoner's exhaustion.  Albino, 747 F.3d at 1173.

12      Finally, "[e]xhaustion should be decided, if feasible, before reaching the merits of a

13  prisoner's claim.  If discovery is appropriate, the district court may in its discretion limit

14  discovery to evidence concerning exhaustion, leaving until later – if it becomes necessary –

15  discovery directed to the merits of the suit. . . . If a motion for summary judgment is denied,

16  disputed factual questions relevant to exhaustion should be decided by the judge, in the same

17  manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and

18  venue."  Albino, 747 F.3d at 1170-71 (citations omitted).

19                    b.  California Regulations

20      Exhaustion requires that the prisoner complete the administrative review process in

21  accordance with all applicable procedural rules.  Woodford v. Ngo, 548 U.S. 81 (2006).  This

22  review process is set forth in California regulations that allow a prisoner to "appeal" any action or

23  inaction by prison staff that has "a material adverse effect upon his or her health, safety, or

24  welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  An inmate must file the initial appeal within 30

25  working days of the action being appealed, and he must file each administrative appeal within 30

26  working days of receiving an adverse decision at a lower level.  Id. § 3084.8(b).

27      The appeal process is initiated by the inmate filing a "Form 602," the "Inmate/Parolee

28  Appeal Form," "to describe the specific issue under appeal and the relief requested."  Id.

15

§ 3084.2(a). The inmate is limited to one issue or related set of issues per each submitted appeal form, and to the space provided on the form to describe the issue and action requested. Id. § 3084.2(a)(1), (2). The inmate is tasked with listing all staff members allegedly involved in the challenged matter and describe their respective involvement. Id. § 3084.2(a)(3). The inmate is requested to provide each "staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal." Id.

Each prison is required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review." Id. § 3084.5(b). If the appeals coordinator allows an appeal to go forward, the inmate must pursue it through the third level of review before it is deemed "exhausted." Id. § 3084.1(b) ("all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted").

C. Undisputed Facts

Unless otherwise noted, the following facts are expressly undisputed by the parties or found to be undisputed pursuant to this court's review of the evidence.[7]

• From March 2011 through December 2012, plaintiff did not file any medical health care appeals at CSP-LAC, CSP-SAC or CMF. See L.D. Zamora Decl., ECF No. 35-6 at 1-2 (all prisons); see also W. Harris Decl., ECF No. 35-7 at 1-2 (CMF).

• From March 2011 through December 2012, plaintiff did not file any CDC 602 appeals at CSP-LAC or CSP-SAC. See B. Harris Decl., ECF No. 35-3 at 1-3, and Ex. A (CSP-LAC); Lynch Decl., ECF No. 35-5 at 1-3, and Ex. A (CSP-SAC).

• From March 2011 through December 2012, plaintiff filed three CDC 602 appeals at CMF that were taken to the Director's or Third Level Review (TLR). See J. Zamora Decl., ECF No. 35-8 at 1-3, and Exs. A through D; see also Milliner Decl., ECF No. 35-4 at 1-3, and Ex. A.

---

[7] Defendants' Statement of Undisputed Facts, ECF No. 51-3, relies in part on declarations and exhibits submitted in support of defendants' prior motion to dismiss, see ECF No. 35. In addition to the allegations of his verified FAC, ECF No. 21, plaintiff has submitted a statement of Material Facts Not in Dispute, ECF No. 63 at 31-3.

1    • First, on September 22, 2011, plaintiff submitted Appeal Log No. CMF-11-01421,

2    challenging the "ICC decision/Illegal Confinement" issued March 30, 2011.  This appeal was

3    denied on TLR on November 29, 2012.

4    • Second, on December 31, 2011, plaintiff submitted Appeal Log No. CMF-12-00080,

5    alleging "illegal confinement" and that defendant Lee ignored plaintiff's requests to review his

6    gang validation package.  This appeal was denied on TLR on August 17, 2012.

7    • Third, on July 10, 2012, plaintiff submitted Appeal Log No. CMF-12-01680,

8    challenging the June 6, 2012 decision authorizing plaintiff to program without restraints but

9    requiring that plaintiff's custody status revert back to maximum at the conclusion of his CMF

10    program participation.  This appeal was cancelled as untimely at the TLR on September 23, 2013,

11    and plaintiff did not challenge the cancellation decision.

12    • Plaintiff filed the initial complaint in this action on December 28, 2012.  ECF No. 12.

13    D.   Analysis

14    Defendants place significant reliance on the Supreme Court's holding in Jones v. Bock,

15    supra, 549 U.S. at 218, that the requirements for administrative exhaustion are defined by the

16    rules of each institution, not by the PLRA.  The Court held:

17
18    > [T]o properly exhaust administrative remedies prisoners must
     > "complete the administrative review process in accordance with the
     > applicable procedural rules," rules that are defined not by the
19    > PLRA, but by the prison grievance process itself.  Compliance with
     > prison grievance procedures, therefore, is all that is required by the
20    > PLRA to "properly exhaust."   The level of detail necessary in a
     > grievance to comply with the grievance procedures will vary from
21    > system to system and claim to claim, but it is the prison's
     > requirements, and not the PLRA, that define the boundaries of
22    > proper exhaustion.

23    Jones, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

24    Defendants rely here on Cal. Code Regs., tit. 15, § 3084.2(a)(3), which provides: "The

25    inmate or parolee shall list all staff member(s) involved and shall describe their involvement in

26    the issue . . . [including] the staff member's last name, first initial, title or position, if known, and

27    the dates of the staff member's involvement in the issue under appeal."  Defendants argue that

28    plaintiff identified only one of the sixteen defendants in his administrative appeals.  Specifically,

17

1  defendant Lee was identified in the initial "explanation of issue" in Appeal Log No. CMF-12-

2  00080.  Defendants contend that all other defendants should be dismissed because plaintiff failed

3  to comply with § 3084.2(a)(3), and therefore failed to exhaust his claims as to defendants other

4  than Lee.

5       This court takes a broader view.  The remaining language of the cited regulation provides:

6  "If the inmate or parolee does not have the requested identifying information about the staff

7  member(s), he or she shall provide any other available information that would assist the appeals

8  coordinator in making a reasonable attempt to identify the staff member(s) in question."  Id., §

9  3084.2(a)(3).  This language allows for the identification of staff subsequent to the initial

10 submission of an appeal.  It is not unreasonable for such identification to take place during the

11 course of exhausting an appeal.  See Barron v. Alcaraz, 2015 WL 1013575, *11 n.11 (E.D. Cal.

12 2015) ("a given appeal may be clarified over the course of interviews and official written

13 responses as the appeal moves through the process of administrative exhaustion"); see also,

14 Goolsby v. Gonzalez, 2014 WL 7272765, *13 (E.D. Cal. 2014) ("the purpose of the interview is

15 to clarify the issue or issues addressed in the appeal").  Absent an express requirement to the

16 contrary – which, despite defendants' rhetoric, does not exist in the California prison regulations

17 – "exhaustion is not per se inadequate simply because an individual later sued was not named in

18 the grievances," Jones, 549 U.S. at 219, at any particular stage of review.

19      For the reasons that follow, liberally construing the allegations of plaintiff's appeals and

20 drawing all inferences reasonably supported by the evidence in plaintiff's favor, the court finds

21 that plaintiff's pursuit of two of the three specified appeals exhausted his due process and

22 deliberate claims against nine of the sixteen named defendants.

23           1.  Appeal Log No. CMF-11-01421

24      In this appeal, submitted September 22, 2011 and designated a challenge to "ICC

25 Decision/Illegal Confinement," plaintiff sought a determination that he was "being confined

26 (Falsely Imprisoned) under cruel and unusual circumstances," and an award of damages.  Plaintiff

27 explained that after his arrival at CMF in August 2011, he was informed by a CDC 128-G Chrono

28 that his validation package remained pending at CSP-LAC.  Plaintiff stated:

1

2

3

> I was never given a 72-hour notice or pres[]ented with the opportunity to attend my initial ICC hearing.  For ICC not to allow me to participate in my ICC hearing has had an adverse [e]ffect on my welfare by illegally keeping me [in] ad-seg status without valid chronos to support an allegation of prison gang association."

4   ECF No. 35-8 at 10, 12 (citations omitted).  Plaintiff requested that he be "brought before an ICC

5   Classification to determine my custody status . . . released from ad seg and have all credits

6   restored . . . returned to AIA Status and placed on the support services priority."  Id. at 10, 12.

7        This appeal was partially granted on First Level Review (FLR), on December 5, 2011, by

8   defendant CMF CDW Arnold, on the ground that plaintiff would be scheduled for an ICC

9   meeting "to discuss your MAX Custody status."  Id. at 22-3.  The FLR informed plaintiff that he

10  had "failed to provide sufficient evidence to support your allegation of being wrongly classified

11  as MAX custody . . . .  Furthermore, your gang validation packet is still pending, therefore, the

12  MAX custody status is deemed appropriate for you."  Id. at 23.  The FLR noted that plaintiff was

13  served with a Gang Validation Package the week of December 5, 2011, by defendant ISU CO

14  Hernandez.  Id. at 22.

15       Following FLR, a Modification Order was generated, scheduling plaintiff for ICC review,

16  which was held in plaintiff's presence on January 25, 2012.  Id. at 24.  The resulting ICC

17  decision, issued by defendant CMF CC Allen, was that "while [plaintiff] is housed at CMF in the

18  DMH/Acute Programs he will retain Max custody pending the validation process for association

19  with the BGF."  Id.

20       In seeking SLR, plaintiff challenged defendant Arnold's FLR decision.  Plaintiff noted

21  that he had been referred to CMF to obtain Long-Term Intermediate Treatment for his mental

22  health needs; that the January 25, 2012 ICC decision[8] (by defendant Allen) improperly focused on

23  responding to plaintiff's appeal rather than his custody/treatment needs; that plaintiff was being

24  improperly retained in Max custody based on CSP-LAC's March 30, 2011 CDC 114-D; that there

25  was no operative CDC 114-D to justify plaintiff's current custody status; that defendant Arnold

26  "specifically based the ICC hearing on a pending validation package I responded too (sic) twice

27  ───────────────

28  [8]  The appeal incorrectly references the "1.25.11" ICC decision.  ECF No. 35-8 at 11.

1    [and] ISU has failed to notify me if this illegal validation package was accepted or rejected by

2    OCS;" that Arnold and the OCS were conspiring to keep plaintiff "illegally confined;" and that

3    plaintiff's Max custody status had an adverse effect on his mental health program participation.

4    ECF No. 35-8 at 11, 13.  Plaintiff requested that he receive treatment "for my mental illness in the

5    High Custody treatment facility stationed on P-3."  Id. at 13.

6         The appeal was partially granted on Second Level Review (SLR) on March 9, 2012, by

7    Correctional Counselor Shaw on behalf of defendant CMF Warden Singh, on the ground that

8    plaintiff was receiving treatment for his mental illness.  The decision acknowledged that, upon

9    plaintiff's arrival at CMF, a "Unit Classification Committee (UCC) held a DMH Program Review

10   in [plaintiff's] absentia where it was determined that the Appellant's level would be retained at

11   Max . . . based on his Max custody status upon arrival and the pending gang validation process."

12   ECF No. 35-8 at 26.  The SLR decision noted that "CMF did not issue the Appellant a CDCR

13   114-D ASU Placement Notice as he is here for psychiatric treatment," and that, "[I]f the

14   Appellant believes that his CDCR 114-D ASU Placement Notice is invalid, he may appeal the

15   issue with LAC."  Id.  Thus, the SLR decision found that plaintiff's "request to be released from

16   ASU is a moot issue because he is not in an ASU rather the Appellant is in a DMH treatment

17   facility . . . an inpatient psychiatric facility," and plaintiff was receiving mental health treatment.

18   Id.  Plaintiff was informed that he would be "notified of his validation status when the OCS has

19   completed their process and generates a CDCR 128-B Chrono to advise the Appellant of the

20   outcome."  Id. at 27.

21        Plaintiff challenged defendant Singh's SLR decision to retain him in Max custody status.

22   He noted that defendant Singh, at a regularly scheduled ICC meeting on January 5, 2012, had

23   previously denied plaintiff's request to receive psychiatric therapy in the High Custody

24   Intermediate Program.  Plaintiff stated that, had he been accorded the opportunity to present

25   evidence at his initial ICC meeting, he would have been able to show that he was released from

26   CSP-LAC's ASU to the general population on April 1, 2011, based on the March 30, 2011 CDC

27   128-G Chrono; and that, because plaintiff did yet know the outcome of his validation package, he

28   had no other documentation to present on his behalf.  Plaintiff asserted that the inability to

1   participate fully in the CMF treatment program "has had an adverse effect on my welfare . . .

2   causing my mental and emotional state to decompensate." Id. at 11, 13.  Plaintiff requested that

3   he receive treatment in the Step Program." Id. at 13.

4        The appeal was denied on TLR by nondefendant officials with the CDCR Office of

5   Appeals on the following grounds:

6            [T]he SLR did in fact provide the appellant with a clear explanation
             to why he was being retained on Maximum custody.    More
7            specifically, the appellant was informed that pending his validation
             process, past disciplinary history, and classification score of 205,
8            Level IV, he would be retained on Maximum custody.

9   Id. at 8.  The TLS declined to address new issues raised by plaintiff in his challenge to the SLR.

10       Defendants contend that "Springfield's issue [in this appeal] was that he was not given

11  notice or the opportunity to attend his initial ICC hearing on March 30, 2011."  ECF No. 51-2 at

12  8.  However, defendants' narrow construction is not supported.  As noted at the SLR, CSP-LAC,

13  not CMF, issued the March 30, 2011 CDC 114-D ASU Placement Notice, and plaintiff was

14  informed that he could challenge that matter only through CSP-LAC.  Moreover, as explained to

15  plaintiff in the SLR, plaintiff's custody status and related treatment parameters at CMF did not

16  rely on CSP-LAC's CDC 114-D, but on other factors.  See ECF No. 35-8 at 26.  Thus, this appeal

17  is reasonably construed as a due process challenge to plaintiff's custody status at CMF and the

18  implications of that status on the nature and quality of plaintiff's mental health treatment.

19       Further, this appeal is reasonably construed to exhaust these claims against defendants

20  Singh, Arnold and Allen.  Although plaintiff cannot state a due process claim against these

21  officials solely because they participated in reviewing plaintiff's appeal,[9] each of these officials

22  _____

   [9]  As a general rule, a defendant's participation in the administrative review or denial of a
23  plaintiff's inmate appeal does not give rise to a cause of action, particularly one premised on due
   process rights.  See e.g. Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988), cert. denied, 488 U.S.
24  898 (1988) (no constitutional right to an inmate appeal or grievance process).  Thus,
   "participation in the prison grievance process does not give rise to a cause of action."  Lewis v.
25  Ollison, 571 F.Supp.2d 1162, 1170 (C.D. Cal. 2008) (dismissing corrections personnel who
   participated in the review and denial of plaintiff's inmate appeals); Buckley v. Barlow, 997 F.2d
26  494, 495 (8th Cir. 1993) (prison official's involvement in administrative appeals process cannot
   serve as a basis for liability in a Section1983 action); Azeez v. DeRobertis, 568 F Supp. 8, 10
27  (N.D. Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any
28  (continued…)

1    was personally responsible for the underlying substantive decisions to retain plaintiff in

2    maximum custody, which in turn impacted the nature and quality of plaintiff's mental health

3    treatment.  The challenged conduct of these officials is substantive, insofar as each official had

4    the authority to modify plaintiff's custody status and the responsibility to reasonably adjust that

5    status to maximum plaintiff's mental health treatment; their respective roles in processing

6    plaintiff's appeals was incidental to this authority.  See Taylor v. List, 880 F.2d 1040, 1045 (9th

7    Cir. 1989) (supervisory officials may be liable under Section 1983 if they failed to prevent or

8    correct an alleged constitutional violation of which they were informed).

9           Accordingly, the court finds that this appeal exhausted plaintiff's due process and

10   deliberate indifference claims against defendants Singh, Arnold and Allen.

11                   2.  Appeal Log No. CMF-12-00080

12          In this appeal, submitted December 31, 2011, plaintiff sought the following official action:

13               I request (Lt. Lee of ISU CMF) be internally investigated and that
                 he generate the necessary chronos to conclude the investigation
14               surrounding my validation process.  Also that my case factors be
                 cleared of prison gang association.  I request the opportunity to
15               receive full psychiatric treatment, yard access and rehabilitation in
                 accordance with my custody status.  That all documents 128-B,
16               128-G or 1030 fully disclose all information used to support a
                 validation; and I request monetary compensation [] for the material
17               adverse effect upon my welfare, due to [my] continued illegal
                 confinement; and that no reprisal follow this appeal.
18

19   ECF No. 35-8 at 40, 42.  Plaintiff alleged that Lt. Lee repeatedly failed to respond to plaintiff's

20   Form 22 requests for information and an interview concerning his gang validation package,

21   resulting in plaintiff's prolonged "illegal confinement" in ad seg.  Id.

22          On February 28, 2012, plaintiff was interviewed by ISU Correctional Sergeant E. Ramos,

23   who issued the FLR decision on that same date.  The appeal was denied on the following

24   grounds:

25               A   thorough   review,   inclusive   of   examination   of   supporting

26   ─────────────────────────────────────────────────────────

27   substantive right upon the inmates.")  These authorities support the conclusion that plaintiff is
     unable to state a cause of action against any defendant, under federal due process law, based on
     that official's unfavorable action in processing plaintiff's administrative appeals.

28

documentation and the appeal interview, reveals you have been provided all necessary documents in regards to your validation package.

Specifically, on December 09, 2011, at approximately 1400 hours you were provided all documents being utilized in your validation package (refer to Gang Validation Evidence Disclosure and Interview Notification [CDCR 128B 24 Hour Disclosure Form]) via CMF ISU Officer S. Hernandez on behalf of CSP-LAC, Assistant Institutional Gang Investigator (AIGI) Officer R. Clemons.

On December 10, 2011, CMF ISU Officer S. Hernandez retrieved your rebuttal and a copy of the CDCR 128B 24 Hour Disclosure Form and mailed these documents to AIGI Clemons at CSP-LAC (refer to receipt from Golden State Overnight) on December 12, 2011.

On February 27, 2012, I contacted CSP-LAC and spoke with AIGI R. Clemons in regards to the status of your validation package. Officer R. Clemons stated he is still waiting for a response from the Office of Correctional Safety (OCS). Officer R. Clemons informed me he would notify CMS ISU when CSP-LAC receives a response in regards to your validation package. It should be noted OCS has 120 days in order to respond to your validation package submitted by CSP-LAC AIGI R. Clemons. CMF ISU will insure upon receiving any information in regards to your validation package you will be immediately notified.

ECF No. 35-8 at 48 (with minor edits).

Plaintiff expressed dissatisfaction with the FLR, on the grounds that: (1) the statement that AIGI Clemons was awaiting a decision from OCS was false because the 120-day period referenced in the FLR had already expired; and (2) "[t]his is clear and unambiguous evidence to show that (ISU) Lt. Lee and the ISU agency ha[ve] continuously conspired to keep petitioner illegally imprisoned at all costs." Id. at 41, 43.

On May 14, 2012, a SLR decision was issued by defendant CMF CDW Duffy, on behalf of defendant CMF Warden Singh. Significantly, the SLR stated that the OSU had rescinded plaintiff's validation package on the ground that plaintiff had been denied due process. The SLR provided in pertinent part:

According to CMF Investigations Services Unit (ISU) Officer Hernandez, on March 19, 2012, CMF ISU received the CDCR 128-B validating the appellant as an associate of the Black Guerilla Family (BFG).

On April 9, 2012, with assistance from other Correctional Staff, ISU Officer Hernandez reported to P-3 housing to issue the CDCR

23

128-B informing the appellant of the validation.  However, during this interview, it appeared the appellant's due process was not met.  Specifically, due to the multi-prison paperwork involvement in this process, the appellant's due process concerning reviewing the gang validation chrono authored by the validating institution's Institutional Gang Investigator (IGI) prior to the submission of the validation package to OCS was not provided to the appellant.

The Department Rules applicable to this appeal [are] contained in the California Code of Regulations, Title 15, Sections 3321 [concerning, inter alia, the reliability of confidential source material] and 3378 [concerning the handling of confidential material in support of identifying and managing security threats].

. . .   After reviewing the appellant's requests of being provided all necessary chronos used in the investigation surrounding the appellant's validation process, it appears the appellant's due process was not met.  In reviewing the source points used in the validation package, the appellant was [not] provided all sources points being used in the validation package. . . .

Based on the above review, OCS was contacted.  According to OCS, due to the appellant's due process not being met, the current validation on the appellant will be rescinded at this time.  However, this] . . . will not preclude any future validation packages on the appellant from being submitted for OCS review.  At this time, the request to receive all necessary chronos used in the investigation surrounding the appellant's validation is denied as the current validation is rescinded.  If the validation is resubmitted for review, the appellant will receive another copy of all source items (including any appropriate chronos) being used in the validation package.  The claim of OCS taking longer than one-hundred and twenty (120) days to complete any review could not be located.  Therefore, this request is denied.

ECF No. 35-8 at 49-50.

Plaintiff expressed dissatisfaction with the SLR, on the grounds that ISU-IGI failed to demonstrate the reliability of the source items underlying the initial gang validation and failed to accord plaintiff due process; plaintiff  also challenged the reliability of each source item; plaintiff challenged his continuing maximum security confinement based on the allegedly invalid gang validation process ("[t]he continual illegal confinement of appellant is malicious and vindictive and without 'some evidence' with 'some indicia of reliability'"); and plaintiff alleged that these factors "have had a material adverse impact on my welfare," including depriving plaintiff of available treatment and related housing options, and denying plaintiff "fair and impartial rehabilitation."  Id. at 41, 43.

1       The appeal was denied on TLR by nondefendant officials with the CDCR Office of

2   Appeals on the following grounds, after the following characterization of plaintiff's arguments:

3           Appellant's Argument:  It is the appellant's position that his due
            process was violated regarding his gang validation.  The appellant
4           argues that [CMF ISU] staff to answer his CDC Form 22,
            Inmate/Parolee request for Interview ... form regarding his gang
5           validation concerns and his inappropriate placement in the [ASU].
            The appellant insists that he was not provided all relevant
6           documents supporting his gang validation.... [and] that Correctional
            Lieutenant Lee assigned to the CMF ISU be investigated for not
7           responding to his CDC Form 22, regarding inappropriate placement
            in the ASU and due process violations regarding his gang validation
8           process....

9           Findings:  ... As the validation in question was appropriately
            rescinded based upon a due process violation, the appellant is not
10          entitled to the documents relative to the investigation surrounding
            the validation.   [Moreover, it was explained that plaintiff need only
11          be provided a CDC Form 812-A/B which summarily identifies each
            source item, citing CDCR DOM 52070.10.1.]...The TLR also
12          determined the appellant's placement in the ASU was appropriate at
            the time as an examination was pending regarding his involvement
13          into suspected gang activity.

14  ECF No. 35-8 at 38-9.

15      Defendants contend that this process renders exhausted only the following claims:

16  "(1) the events incident to the March 30, 2011 ICC hearing only as to Defendant Lee; and (2)

17  Defendant Lee's conduct during and subsequent to the January 11, 2012 ICC hearing related to

18  Plaintiff's gang validation proceedings."  ECF No. 51-2 at 8.

19      The court construes the substance of this exhausted appeal more broadly.  Due to

20  defendants' concession, reflected in the SLR decision, that plaintiff's gang validation failed to

21  satisfy due process, plaintiff has clearly stated viable due process claims against the officials

22  responsible for investigating and validating him as an associate of the BGF.  Although plaintiff

23  initially named only defendant Lee, the appeal decisions, together with plaintiff's allegations,

24  reflect the express and implicit involvement of several other defendants.

25      According to the website operated by California Department of Corrections and

26  Rehabilitation (CDCR), the Office of Correctional Safety (OCS) is a department-wide office that

27  includes the Special Services Unit(SSU), which is tasked with investigations into the gang

28  ////

                                            25

1  affiliations of prison inmates.[10]  This responsibility includes cooperation with the Investigative

2  Services Unit (ISU) and Institutional Gang Investigators (IGIs) at each institution.  These various

3  entities and individuals work in tandem; the final validation decision is made by the OCS.  A

4  prisoner challenging a gang validation process and/or findings is necessarily limited to utilizing

5  the grievance system available at his or her place of incarceration.  Other administrative remedies

6  are unavailable.  Moreover, such challenges are inherently broad, against all involved

7  OCS/SSU/ISU/IGI officials, particularly when there has been an unspecified concession that an

8  inmate was denied due process.

9       In the present case, plaintiff broadly challenged the process, officials and findings

10  associated with his gang validation in the only way he could, through the CMF grievance

11  procedure.  In light of the official concession made in this appeal that plaintiff's due process was

12  violated in the process of his validation, this court finds that plaintiff is entitled to pursue this

13  claim against all named defendants involved in that process.  Construing plaintiff's appeal in

14  tandem with the responsive appeal decisions demonstrates that plaintiff expressly exhausted his

15  due process challenges against defendants CMF ISU Lt. T. Lee, CMF ISU CO Hernandez, and

16  CSP-LAC AIGI Clemons.  In addition, based on plaintiff's appeal allegations against all the "ISU

17  agency" and "ISU-IGI," the allegations of plaintiff's FAC, and the complexity of the gang

18  validation process itself, the court finds that this appeal implicitly exhausted plaintiff's due

19  process challenges against CSP-LAC IGI Corr. Capt. Williams, CSP-LAC IGI Romero, and CSP-

20  LAC ISU CO Mebane.

21       Further, although none of these defendants were directly responsible for providing mental

22  health care to plaintiff, the record supports a reasonable inference that all were aware of

23  plaintiff's transfer to CMF for mental health treatment.  The fact that the resulting validation was

24  rescinded based on an express finding that plaintiff's validation had gone awry, supports the

---

25  [10]  See http://www.cdcr.ca.gov/adult_operations/OCS.html.  This Court may take judicial notice

26  of facts that are capable of accurate determination by sources whose accuracy cannot reasonably
   be questioned. Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2

27  (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to
   reasonable dispute.").

28

1    reasonable inference that one or more of these officials, at some point in the process, may have

2    disregarded known risks to plaintiff's mental health by failing to promptly inform CMF that the

3    principal reason for his retention in maximum custody, viz., plaintiff's ongoing gang validation

4    investigation – which significantly limited the scope and impact of plaintiff's mental health

5    treatment –  was no longer valid.

6          Finally, pursuant to his initial allegations in this appeal, plaintiff requested that "my case

7    factors be cleared of prison gang association [and] I [be accorded] the opportunity to receive full

8    psychiatric treatment, yard access and rehabilitation in accordance with my custody status."  ECF

9    No. 35-8 at 40, 42.  Plaintiff's maximum custody status was not addressed in defendant Singh's

10   SLR decision.  However, in challenging that decision, plaintiff asserted, inter alia, that he was

11   being denied a "fair and impartial rehabilitation."  Id. at 43.  The court finds that this appeal, like

12   Appeal Log No. CMF-11-01421, exhausted plaintiff's due process and deliberate indifference

13   claims against defendant Singh.

14         Accordingly, the court finds that this appeal exhausted plaintiff's due process and

15   deliberate indifference claims against defendants Lee, Hernandez, Clemons, Williams, Romero,

16   and Mebane, and Singh.

17                    3.  Appeal Log No. CMF-12-01680

18         Pursuant to this appeal, submitted July 10, 2012, plaintiff challenged the June 6, 2012 ICC

19   decision granting his request to program without mechanical restraints, but stating that his

20   custody status "will revert back to Max custody upon DMH discharge pending gang validation

21   process."  ECF No. 35-9 at 38, 48.  The only named defendant who participated in the ICC

22   decision was B. Duffy, then Chief Deputy Warden.

23         The appeal was bypassed to the SLR because it concerned an ICC decision.  ECF No. 35-

24   9 at 44.  An Amended SLR decision issued May 13, 2013,[11] by Correctional Counselor Milliner,

25   on behalf of defendant B. Duffy, then newly designated CMF Warden.  See id. at 44-5.  The SLR

---

26   [11]  An initial SLR was issued August 27, 2012, by Correctional Counselor Sinkovich, on behalf of
27   defendant V. Singh, then CMF Warden, ECF No. 35-9 at 46-7; the Amended SLR was issued
     after plaintiff's challenge submitted September 26, 2012, ECF No. 37, 39.

28

1  expressly avoided addressing plaintiff's gang validation status because that matter was the subject

2  of Appeal Log No. CMF-12-00080. The SLR decision provided in pertinent part:

3  
> Appellant was received at CMF on August 5, 2011 to receive
> inpatient psychiatric treatment at DMH and return to the sending
4  
> institution upon discharge from DMH. Appellant's custody level
> was MAX, therefore ICC acted to reduce the level of custody to
5  
> Close A so that the Appellant could participate in his treatment
> program without restraints (handcuffs). CMF was not involved in
6  
> the Appellant's gang validation process,[12] so ICC determined that
> the Appellant should return to his sending institution with the same
7  
> level of custody that he left with (MAX). On July 20, 2012,
> Appellant was transferred to [CSP-]SAC.
8  

9  ECF No. 35-9. The SLR designated the appeal partially granted on the ground that no reprisal or

10  retaliation would be taken against plaintiff. Id.

11  However, this appeal was cancelled in its entirety at the Third Level on September 24,

12  2013, by Appeals Chief J.D. Lozano, on the ground that plaintiff had initially submitted the

13  appeal more than 30 days after the date of discovery of the challenged ICC decision, and

14  therefore outside the time limitations of Cal. Code. Regs., tit. 15 § 3084.8(b)(1)-(2). See ECF No.

15  35-9 at 35. Plaintiff was advised that he could appeal the cancellation decision, see id., but he did

16  not do so. Plaintiff does not dispute this fact.

17  Accordingly, the court finds that this appeal exhausted no claims.

18  E. Summary

19  For the foregoing reasons, this court finds that Appeal Log No. CMF-11-01421 exhausted

20  plaintiff's claims against defendants Singh, Arnold and Allen; and Appeal Log No. CMF-12-

21  00080 exhausted plaintiff's claims against defendants Lee, Hernandez, Clemons, Williams,

22  Romero, Mebane, and Singh. Therefore, the undersigned recommends that defendants' motion

23  _____

24  [12]  The underlying ICC decision provides in pertinent part (ECF No. 35-9 at 48):

25  
> ICC notes that . . . [plaintiff] has remained disciplinary free since
> his arrival at CMF/DMH. In regards to Springfield's pending gang
> validation process, ISU Lt. Lee provided input in today's committee
26  
> that while Springfield is under current investigation at LAC-IV, he
> will not pursue this matter while the Subject remains housed in
27  
> DMH. Case factors indicate that the Subject is not an active gang
> member, only having associations with the group.
28

1  for summary judgment be denied as to each of these defendants.  The undersigned recommends

2  that defendants' motion be granted as to remaining defendants Wofford, Cromwell, Duffy, Meier,

3  O'Brian, Konrad and Villasenor, due to plaintiff's failure to exhaust administrative remedies

4  against those defendants.

5  IV.  MOTION TO DISMISS

6       Defendants move to dismiss this action in its entirety for failure to state a cognizable

7  claim against any defendant.  ECF No. 54.  Plaintiff filed an opposition, ECF No. 61, and

8  defendants filed a reply, ECF No. 68.  Plaintiff thereafter filed a surreply, ECF No. 72, which

9  defendants move to strike, ECF No. 75.

10      A.  Surreply

11      For the same reasons that the court grants defendants' motion to strike plaintiff's surreply

12  to defendants' motion for summary judgment, the court also grants defendants' motion to strike

13  plaintiff's surreply to defendants' motion to dismiss.

14      B.  Legal Standards for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

15      In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a

16  complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it

17  must contain factual allegations sufficient to "raise a right to relief above the speculative level."

18  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading must contain

19  something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

20  cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure

21  § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual matter,

22  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

23  U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when

24  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

25  defendant is liable for the misconduct alleged."  Id.

26      In considering a motion to dismiss, the court must accept as true the allegations of the

27  complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976),

28  and construe the pleading in the light most favorable to the party opposing the motion and resolve

1    all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396

2    U.S. 869 (1969).  The court will "'presume that general allegations embrace those specific facts

3    that are necessary to support the claim.'"  National Organization for Women, Inc. v. Scheidler,

4    510 U.S. 249, 256 (1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

5    Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

6    Haines v. Kerner, 404 U.S. 519, 520 (1972).

7         The court may consider facts established by exhibits attached to the complaint.  Durning

8    v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts

9    which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388

10   (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed

11   with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The

12   court need not accept legal conclusions "cast in the form of factual allegations."

13        C.   Analysis

14             1.   Due Process

15        As the court has noted above, the record contains defendants' concession that plaintiff's

16   gang validation and underlying investigation (commenced March 2011) violated plaintiff's rights

17   to due process, and that plaintiff was informed of this sometime between May 14, 2012 (the date

18   of the subject SLR decision which acknowledged the violation) and June 5, 2012 (the date that

19   plaintiff submitted his challenge to the SLR decision).[13]  While the record is vague as to the

20   timing and nature of these due process violations,[14] they likely reflect the failure of officials to

21   adhere to state procedural regulations.[15]  However, plaintiff's federal due process rights are

22   _____

     [13]  The date that the subject SLR decision was returned to plaintiff is illegible.  See ECF No. 35-8

23   at 41.

     [14]  As set forth in the May 14, 2012 SLR decision in Appeal Log No. CMF-12-00080, on April 9,

24   2012, when ISU Officer Hernandez sought to inform plaintiff of his validation, it became
     apparent that plaintiff's "due process was not met.  Specifically, due to the multi-prison

25   paperwork involvement in this process, the appellant's due process concerning reviewing the
     gang validation chrono authored by the validating institution's [IGI] prior to the submission of the

26   validation package to OCS was not provided to the appellant."  ECF No. 35-8 at 49.

     [15]  California regulations controlling the procedures for investigating and validating a prisoner as

27   a gang associate or member require the following:
     (continued…)

28

                                                   30

1    clearly implicated.[16]

2          Defendants move broadly to dismiss plaintiff's due process claims against all defendants

3    on the ground that plaintiff has failed to demonstrate he had any protected liberty interest.  No

4    specific defendants are identified.  Defendants conclude, "[e]ven assuming plaintiff was denied

5

6                California requires adherence to the following procedures for
             validating an inmate as a gang associate or member. "Gang

7             involvement allegations shall be investigated by a gang
             coordinator/investigator or their designee." 15 Cal. Code Regs. §

8             3378(c). "Prior to submission of a validation package to the OCS ...
             the subject of the investigation shall be interviewed by the

9             Institution Gang Investigator, or designee, and given an opportunity
             to be heard in regard to the source items used in the validation or

10           inactive status review." Id., § 3378(c)(6)(A). "Inmates shall be
             given written notice at least 24 hours in advance of the interview"

11           and, at the time of notification, "[a]ll source items ... shall be
             disclosed to the inmate," who shall be provided with copies of all

12           non-confidential documents." Id., § 3378(c) (6)(B), (C).
             "Confidential information ... shall be disclosed ... via a CDC Form

13           1030[] Confidential Information Disclosure Form." Id., §
             3378(c)(6)(C).

14
             "The interview shall be documented and include a record of the

15           inmate's ... opinion on each of the source items used in the
             validation. Staff shall record this information and provide a written

16           record to the inmate ... within fourteen (14) calendar days and prior
             to submission of the validation package to OCS." Id., §

17           3378(c)(6)(D). "The documented interview shall be submitted with
             the validation package to the OCS for consideration to approve or

18           reject the validation." Id., § 3378(c)(6)(E). "The inmate's mental
             health status and/or need for staff assistance shall be evaluated prior

19           to interview. Staff assistance shall be assigned per guidelines set
             forth in section 3318." Id., § 3378(c)(6)(F).

20
             Verification of gang affiliation "shall be validated or rejected by the

21           chief, office of correctional safety (OCS), or a designee." Id., §
             3378(c)(6). "The validation ... of evidence relied upon shall be

22           documented on a CDC Form 128–132 [], Gang
             Validation/Rejection Review, and forwarded to the facility or

23           parole region of origin for placement in the inmate/parolee's central
             file. Upon receipt of the CDC Form 128–132, the Classification and

24           Parole Representative or Parole Administrator I, or their designee,
             shall clearly note in some permanent manner upon the face of every

25           document whether or not the item met validation requirements."
             Id., § 3378(c)(6)(G).

26   Rios v. Tilton, 2013 WL 4541825, *11 n.6 (E.D. Cal. 2013).

27   [16]  The court here makes no determination whether and to what extent violation of the applicable
     regulations may infringe constitutional rights, but notes the seriousness of the question.

28

31

1   due process, no single defendant's conduct or violation . . . amounted to a constitutional

2   deprivation."  ECF No. 68 at 3; see also ECF No. 54-1 at 6-7.

3          "States may under certain circumstances create liberty interests which are protected by the

4   Due Process Clause.  But these interests will be generally limited to freedom from restraint

5   which, while not exceeding the sentence in such an unexpected manner as to give rise to

6   protection by the Due Process Clause of its own force, see, e.g., Vitek [v. Jones], 445 U.S. [480

7   (1980)] at 493 (transfer to mental hospital), and Washington [v. Harper], 494 U.S. [210 (1990)] at

8   221-22 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and

9   significant hardship on the inmate in relation to the ordinary incidents of prison life," or "will

10  inevitably affect the duration of [the inmate's] sentence."  Sandin v. Conner, 515 U.S. 472, 483-

11  84, 487 (1995).  "'Atypicality' . . . turns on the importance of the right[s] taken away from the

12  prisoner."  Bailey v. Fansler, 2009 WL 151204, *3 (D. Ariz. 2009).

13         A prison gang validation decision meets federal procedural due process requirements if it

14  is supported by "some evidence" that bears "some indicia of reliability."  Castro v. Terhune, 712

15  F.3d 1304, 1314 (9th Cir. 2013) (citations and internal quotation marks omitted).  The related

16  assignment of a prisoner to segregated housing meets federal procedural due process standards if

17  the prisoner has "'an opportunity to present his views' to the official 'charged with deciding

18  whether to transfer him to administrative segregation.'"  Toussaint v. McCarthy, 926 F.2d 800,

19  803 (9th Cir.1990) (Toussaint IV) (quoting Hewitt v. Helms, 459 U.S. 460, 476 (1983)).  Prison

20  officials must (1) hold an informal non-adversarial hearing within a reasonable time after the

21  prisoner is initially segregated, (2) inform the prisoner of the reasons for segregation, and (3)

22  allow the prisoner to present his views.  Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir.

23  1986) (Toussaint III).  However, "the due process clause does not require detailed written notice

24  of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses,

25  or a written decision describing the reasons for placing the prisoner in administrative

26  segregation."  Id. at 1100-01.  Following a prisoner's initial placement in administrative

27  segregation, prison officials must periodically review the appropriateness of the confinement.  Id.

28  at 1101-02.

1    "California's policy of assigning suspected gang affiliates to [segregated housing] is not a

2    disciplinary measure, but an administrative strategy designed to preserve order in the prison and

3    protect the safety of all inmates."  Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)

4    (quoted with approval in Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003).  Cf. Wolff v.

5    McDonnell, 418 U.S. 539 (1974) (procedures required for disciplinary confinement).  Moreover,

6    "a prisoner does not have a constitutional right to be housed at a particular institution [or] to

7    receive a particular security classification."  Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997)

8    (citing, respectively, Meachum v. Fano, 427 U.S. 215, 224 (1976), and Moody v. Daggett, 429

9    U.S. 78, 88 n.9 (1976)); see also Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987)

10   (prisoner has no due process right to a particular classification and related eligibility for

11   rehabilitative programs).

12        It is implicit in the allegations of the FAC that one or more of the gang investigation

13   defendants "dropped the ball" by failing to promptly ascertain that the process underlying

14   plaintiff's gang validation was flawed, and by failing to promptly communicate this information

15   to the critical decision makers at CMF overseeing plaintiff's housing and treatment.  Plaintiff's

16   allegations are replete with assertions that all defendants acted, or failed to act, "vindictively and

17   maliciously."  Plaintiff's allegations, read broadly, assert that each of the named investigating

18   officials had the authority, resources and responsibility at all times to ascertain whether plaintiff's

19   gang investigation was in compliance with state regulations and federal due process, and had the

20   affirmative obligation to promptly inform CMF that the principal reason for maintaining plaintiff

21   in maximum custody had evaporated.

22        In light of defendants' concession of nonspecific due process violations, and for the

23   reasons identified in the court's assessment of plaintiff's Appeal Log No. CMF-12-00080, the

24   court finds that plaintiff states federal procedural due process claims against all of the named

25   defendants involved in his gang investigation and validation, specifically, CMF ISU Lt. T. Lee,

26   CMF ISU CO Hernandez, CSP-LAC AIGI Clemons, CSP-LAC IGI Corr. Capt. Williams, CSP-

27   LAC IGI Romero, and CSP-LAC ISU CO Mebane.

28        The court also finds that plaintiff states cognizable due process claims against the CMF

defendants.  The court initially notes that plaintiff's numerous allegations of procedural error at each CMF classification hearing (e.g., failure to provide plaintiff sufficient advance notice, failure to require plaintiff's attendance, failure to provide the assistance of a staff or investigative employee, failure to provide plaintiff the opportunity to present evidence and witnesses),[17] do not appear to state cognizable procedural due process claims.  See, e.g., Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993) (finding no cognizable due process claim premised on plaintiff's allegation that prison officials failed to comply with a Washington prison regulation requiring advance notice to prisoners of an initial segregation hearing) (quoting Toussaint III, 701 F.2d at 1098 ("procedural requirements, even if mandatory, do not raise a constitutionally cognizable liberty interest")); see also Brown v. Frey, 889 F.2d 159, 166 (8th Cir. 1989) ("Although the state statute and its corresponding regulations are violated if no hearing [on prisoner's administrative confinement] is held within three working days, the Constitution is violated only if (1) the state statute raises a protected liberty interest by explicit and mandatory language and (2) the hearing is not held within a reasonable time."); Tony L by and through Simpson v. Childers, 71 F.3d 1182, 1185 (6th Cir. 1995) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.").

However, plaintiff's assertion that the decisions reached at the CMF hearings were fundamentally flawed because premised on information that proved invalid, thereby causing plaintiff injury, does appear to state federal procedural due process claims.  See e.g., Tapia v. Alameida,  2006 WL 842470  (E.D. Cal. 2006) (rejecting plaintiff's claims that he was denied due process at ICC and UCC hearings because not allowed to present favorable evidence or call witnesses, but permitting plaintiff to proceed on his due process claim that the periodic reviews were "meaningless gestures" because "conducted by committees that did not have the authority to make any changes to plaintiff's validation and resulting housing assignment"); accord, Madrid v.

---

[17]  California prison regulations provide, under certain circumstances, that an inmate be accorded the aid of a staff assistant and/or investigative employee, see Cal. Code Regs. tit. 15, §§ 3336(b), 3341, 3318, and the opportunity to present evidence and call witnesses, id., § 3338(h).

1    Gomez, 889 F. Supp. 1146, 1276 (N.D .Cal. 1995) (perfunctory ICC and IGI hearings "violate the

2    fundamental tenet of due process that opportunities to be heard must be granted;" such hearings

3    must be conducted "in a meaningful manner"); see also Toussaint III, 801 F.2d at 1101-02

4    ("substantive criteria" for justifying administrative segregation "assure that plaintiffs' due process

5    rights are not meaningless gestures").

6          The interplay between plaintiff's flawed gang investigation commenced at CSP-LAC, and

7    plaintiff's resulting security assessment at CMF and allegedly compromised mental health

8    treatment, render plaintiff's circumstances at CMF something more than mere disagreement with

9    his custody status or classification.  Cf., Neal, supra, 131 F.3d at 828; Hernandez, supra, 833

10   F.2d at 1318.  Plaintiff persuasively alleges that the pendency of his gang investigation

11   commenced at CSP-LAC was the principal reason he was retained in maximum custody at CMF,

12   mechanically restrained during treatment, limited to treatment at the DPS (Discretionary Program

13   Status) level, and precluded from advancing to Steps 1 through 3 of the program, and that, as a

14   result, he decompensated mentally and suffered self-inflicted physical injury.  See ECF No. 35-9

15   at 31-2.

16         While defendants complain that plaintiff has merely used the appropriate legal

17   terminology in support of his claims, the court finds that plaintiff's complex and interrelated

18   factual allegations, including the allegation that each of the challenged ICC and UCC decisions

19   were fundamentally flawed, state cognizable due process claims that the evidence relied upon to

20   retain his maximum custody status at CMF did not contain "some indicia of reliability," Castro,

21   712 F.3d at 1314, and that the resulting conditions of his confinement imposed an "atypical and

22   significant hardship" on plaintiff "in relation to the ordinary incidents of prison life," Sandin, 515

23   U.S. at 484.  These allegations also appear to support the protections of the Due Process Clause

24   "of its own force."  Id.  As emphasized by the Supreme Court, additional circumstances may

25   "give rise to protection by the Due Process Clause of its own force."  Sandin, 515 U.S. at 484.

26   These circumstances include the involuntary transfer of prisoner to a mental hospital, Vitek, 445

27   U.S. at 493-94, and the involuntary administration of antipsychotic drugs, Washington, 494 U.S.

28   at 221-22.  See Sandin, 515 U.S. at 484; see also Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

1   Both of these circumstances are present to some degree in the instant case.

2           Because each of the named CMF officials – CMF CC II Allen, Warden Singh and CDW

3   Arnold – were responsible for ensuring the validity of the factors relied upon to maintain plaintiff

4   in maximum custody, the court finds that plaintiff has stated cognizable federal procedural due

5   process claims against each of these defendants.

6           For these several reasons, the court finds that plaintiff has stated cognizable federal

7   procedural due process claims against defendants Lee, Hernandez, Clemons, Williams, Romero,

8   Mebane, Allen, Singh and Arnold.

9                           2.  Deliberate Indifference to Mental Health Needs

10          Defendants contend that "any deprivation of [plaintiff's] mental health treatment was

11  objectively, not sufficiently serious to establish an Eighth Amendment violation," and that the

12  FAC is "devoid of allegations implicating a culpable state of mind by the Defendants."  ECF No.

13  54-1 at 8; see also ECF No. 68 at 4.  Defendants also assert that plaintiff is unable to state a causal

14  connection between any defendant's conduct and plaintiff's alleged injuries.  ECF No. 54-1 at 11.

15  Defendants assert that the CDC 128-B prepared by defendant Clemons (in which he opined that

16  plaintiff was attempting to avoid validation by diverting attention to his mental health needs) was

17  merely a factual narrative without any indication that Clemons knew of or disregarded an

18  excessive risk to plaintiff's mental health.  Defendants assert that plaintiff is unable to state a

19  deliberate indifference claim against defendants Allen, Singh, Arnold[18] because their only

20  challenged conduct was to chair the challenged ICC meetings.

21          "[D]eliberate indifference to serious medical needs of prisoners constitutes the

22  unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true

23  whether the indifference is manifested by prison doctors in their response to the prisoner's needs

24  or by prison guards [or other prison officials] in intentionally denying or delaying access to

25  medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble,

26  _____

[18]  Defendants also assert in this context that plaintiff is unable to state a deliberate indifference
27  claim against defendants Wofford or Meier; however, it is recommended that these defendants be
    dismissed on the ground that plaintiff failed to exhaust administrative remedies against them.
28

1    429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted).

2    "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they

3    'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d

4    1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.

5    1988)).

6         "In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the

7    plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's

8    condition could result in further significant injury or the unnecessary and wanton infliction of

9    pain.  Second, the plaintiff must show the defendant's response to the need was deliberately

10   indifferent.  This second prong ... is satisfied by showing (a) a purposeful act or failure to respond

11   to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v.

12   Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks

13   omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR,

14   726 F.3d 1062, 1081 (9th Cir. 2013).

15        To state a claim for deliberate indifference to serious medical needs, a prisoner must

16   allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or

17   safety; the official must both be aware of the facts from which the inference could be drawn that a

18   substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan,

19   511 U.S. 825, 837 (1994).

20        The parties do not dispute that plaintiff's mental health needs are objectively "serious."

21   "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further

22   significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974

23   F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104

24   F.3d 1133 (9th Cir. 1997) (en banc) (quoting Estelle, 429 U.S. at 104).

25        Further, although the record is inadequate at this stage of the litigation to render a

26   definitive assessment, the court finds plaintiff's allegations that (1) his maximum custody

27   restrictions significantly reduced his access to available mental health care and (2) the combined

28   effect of these factors had a deleterious impact on his mental and physical health, demonstrate

1    "sufficiently serious" deprivations to support plaintiff's Eighth Amendment claims.  Farmer, 511

2    U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); see also Jett, 439 F.3d at 1096

3    (deliberate indifference claim requires demonstration of harm caused by challenged act or failure

4    to act).

5         A liberal construction of plaintiff's allegations supports cognizable claims for deliberate

6    indifference to his serious mental health needs against CMF decision-makers Allen, Singh and

7    Arnold.  The record demonstrates that each of these defendants was keenly aware of plaintiff's

8    serious mental health needs and that plaintiff had been transferred to CMF for the specific

9    purpose of stabilizing his mental health ("psych and return").  The allegations of the FAC and

10   attached exhibits support a reasonable inference that each of these defendants, when deciding

11   plaintiff's custody status, had the obligation to ensure that the reasons for retaining plaintiff in

12   maximum custody were valid, and that this decision was critical to the form and quality of

13   plaintiff's mental health treatment.  Plaintiff's allegations that the CMF defendants failed to meet

14   this obligation states cognizable deliberate indifference claims against defendants Allen, Singh

15   and Arnold.

16        The court also finds, for present purposes, that plaintiff states cognizable deliberate

17   indifference claims against the gang investigation defendants.  Plaintiff alleges that these

18   defendants "knew of" his serious mental health needs, and "disregarded" that need, resulting in

19   the deterioration of his mental and physical health.  Farmer, 511 U.S. at 837.  Plaintiff alleges that

20   the deliberate indifference of these defendants is demonstrated by their dilatory or intentional

21   conduct in failing to promptly inform CMF that plaintiff's gang investigation was flawed and/or

22   that his validation had been rescinded.  As a result, plaintiff's treatment without restraints at CMF

23   was delayed, resulting in excessive risk of injury, and actual injury, to plaintiff's mental health

24   and physical safety, demonstrated in part by his self-inflicted physical injuries and the involuntary

25   administration to plaintiff of psychotropic medications.

26        Implicit in these allegations is the assumption that all of the gang investigation defendants

27   were aware of the restrictions placed on plaintiff's treatment for his serious mental health needs

28   due to plaintiff's pending gang investigation.  Although the current record does not connect all of

1    these dots, the court finds that plaintiff's allegations are sufficient at this time to allow him to

2    proceed on his deliberate indifference claims against defendants Lee, Hernandez, Clemons,

3    Williams, Romero, and Mebane, as well as Allen, Singh and Arnold.

4            D.   Summary

5            For these several reasons, the court finds that plaintiff has stated cognizable claims for

6    denial of federal due process and deliberate indifference to his serious mental health needs against

7    defendants Allen, Singh, Arnold, Lee, Hernandez, Clemons, Williams, Romero, and Mebane.

8    V.   LEAVE TO FILE A SECOND AMENDED COMPLAINT

9            Due to the narrowing of defendants and claims in this action, as recommended herein, and

10   to provide for more concise pleadings and a more manageable record for purposes of summary

11   judgment and/or trial, the undersigned further recommends that plaintiff be accorded leave to file

12   a Second Amended Complaint (SAC) if he so chooses.  See Fed. R. Civ. P. 15(a)(2) (court should

13   freely accord leave to amend pleadings "when justice so requires").  Plaintiff should not be

14   obligated to amend his complaint.  If plaintiff chooses not to file a SAC, it is recommended that

15   this action proceed on the FAC as construed herein.

16           If plaintiff elects to file a SAC, it is recommended that he be required to do so within

17   thirty days after a final decision on these findings and recommendations.  Plaintiff may, but need

18   note, attach pertinent exhibits; he may, instead, reference the exhibits attached to his FAC, ECF

19   No. 21.  Local Rule 220 requires that an amended complaint be complete in itself without

20   reference to any prior pleading.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (amended

21   complaint supersedes prior operative complaint).  Therefore, in an amended complaint, each

22   claim and the involvement of each defendant must be sufficiently alleged.

23           The SAC must allege in specific terms how each named defendant allegedly violated

24   plaintiff's constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no

25   liability under Section 1983 unless there is some affirmative link or connection between a

26   defendant's actions and the claimed deprivation.  Id.; May v. Enomoto, 633 F.2d 164, 167 (9th

27   Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory

28   allegations of official participation in civil rights violations are not sufficient.  Ivey v. Board of

Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Accordingly, plaintiff is advised that an SAC will best serve its intended function if it separately specifies, and identifies where possible by date, the acts of each individual defendant that are alleged to have violated his due process rights and/or demonstrated deliberate indifference to his serious medical need.

The SAC may include allegations previously presented in Springfield v. Allen, Case No. 2:13-cv-00809 KJM AC P.

VI.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Defendants' motion, ECF No. 75, to strike plaintiff's surreplies is granted; plaintiff's surreplies, ECF Nos. 72, 74, are stricken; and

2.  The Clerk of Court is directed to correct the spelling of defendant O'Brian's name on the docket.

Further, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment, ECF No. 51, be granted in part and denied in part;

2.  Defendants Wofford, Cromwell, Duffy, Meier, O'Brian, Konrad and Villasenor be dismissed from this action without prejudice on the ground that plaintiff failed to exhaust his administrative remedies against them;

3.  Defendants' motion to dismiss, ECF No. 54, be granted in part and denied in part;

4.  This action proceed on plaintiff's due process and deliberate indifference claims against defendants Allen, Singh, Arnold, Lee, Hernandez, Clemons, Williams, Romero, and Mebane, as construed by the findings and recommendations; and

5.  Plaintiff be granted thirty days after the final decision on these findings and recommendations to file and serve, if he so chooses, a Second Amended Complaint (SAC) that is limited to the defendants and claims identified herein.  If plaintiff chooses not to file a SAC, this action should proceed on the FAC as construed by the findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

1   after being served with these findings and recommendations, any party may file written

2   objections with the court, which shall be captioned "Objections to Magistrate Judge's Findings

3   and Recommendations."  A copy of any objections filed with the court shall also be served on all

4   parties.  The parties are advised that failure to file objections within the specified time may waive

5   the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6   DATED: March 24, 2015

7

8   ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28